## MIKE BROSHEARS v. STATE.

No. A-3257—Opinion Filed Feb. 17, 1920.

(187 Pac. 254.)

(Syllabus.)

1. **MALICIOUS MISCHIEF—Evidence—Insufficiency.** Record examined, and held competent substantive evidence of guilt insufficient to sustain the conviction.

2. **TRIAL—Witnesses—Rule as to Prosecutor's Impeachment of State's Witness on Ground of Surprise—Instructions.** Where the trial court permits the prosecuting officer, upon the ground of surprise, to impeach a state's witness by showing contradictory testimony given at the preliminary examination, the impeachment of such witness should be limited only to a contradiction of the material testimony given at the trial which is injurious to the state, and such matters should be called specifically to the attention of the witness. The trial court, under such circumstances, should positively instruct the jury that none of the contradictory statements may be considered as substantive evidence of guilt. Before impeaching evidence of this kind is permitted to be introduced, there should be a clear showing of surprise on the part of the state.

*Appeal from Superior Court, Okmulgee County;*
*R. E. Simpson, Judge.*

Mike Broshears was convicted of the crime of unlawful destruction of public property, and he appeals. Reversed and remanded, with instructions.

*E. M. Carter,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. The Attorney General has filed in this case the following brief and confession of error:

"On the 29th day of September, 1917, in the superior court of Okmulgee county, Mike Broshears, plaintiff in error herein, and hereinafter referred to as defendant, was convicted of the crime of injuring and destroying public improvements, and awarded a term of seven years in the state penitentiary. On the 14th day of February, 1918, he lodged in this court his appeal from said judgment of conviction.

"The defendant was tried and convicted of the crime of destroying with dynamite the water reservoir of the town of Dewar. The evidence against him was circumstantial, except that in his preliminary examination his 15 year old boy testified for the state, making out a complete case against him, and at the final trial, on this boy's failure to testify favorably to the state, this evidence given by him at the preliminary examination was introduced in behalf of the prosecution. His entire testimony was introduced into the record after the witness had refused to testify to the material facts in favor of the prosecution, as disclosed by his former testimony.

"In asking to have this judgment reversed, counsel for defendant presents to this court the following specifications of error:

" 'First. That the court erred in refusing to sustain the demurrer to the information filed herein, to which action of the court the defendant at the time excepted.

" 'Second. That the court erred in refusing to grant the application of the defendant for a change of venue in

this cause, to which action of the court in refusing to do so the defendant at the time excepted.

" 'Third. That the court erred in permitting the state, over the objection of the defendant, to introduce at the trial before the jury incompetent, irrelevant, and immaterial evidence, to which action of the court the defendant at the time duly excepted.

    *      *      *      *      *      *      *      *

" 'That the court erred in refusing to give in his charge to the jury instruction No. 2 offered by the defendant, to which action of the court the defendant at the time duly excepted.

" 'Specification of Error 1. That the court erred in refusing to sustain the demurrer to information filed herein, to which action of the court the defendant at the time excepted.'

"There is no merit in this contention. The information contained the allegation that the tank was public property of the town of Dewar, and there is nothing in the specific allegation, to wit, 'which was used as public property,' necessarily changing the preceding allegation. In other words, after the allegation that a thing is public property, a subsequent allegation that it is being used as such is not contradictory of ownership.

" 'Specification of Error 2. That the court erred in refusing to grant the application of the defendant for a change of venue in this cause, to which action of the court in refusing to do so the defendant at the time excepted.'

"In view of the extremely light sentence which defendant was awarded, based upon the evidence submitted to them, no abuse of discretion is shown on the part of the trial judge in refusing on order transferring the case to another court in the same county.

" 'Specification of Error 3. That the court erred in permitting the state, over the objection of the defendant,

to introduce at the trial before the jury incompetent, irrelevant, and immaterial evidence, to which action of the court the defendant at the time duly excepted.

\*       \*       \*       \*       \*       \*       \*       \*

" 'That the court erred in refusing to give in his charge to the jury instruction No. 2 offered by the defendant, to which action of the court the defendant at the time duly excepted.'

"A portion of these assignments under these specifications of error not only possess merit, but as long as judicial trials partake the nature of law as we now know it, such errors as committed or rather permitted by the court in this trial must necessarily work a reversal in any criminal case. However, in the cross-examination of defendant's witnesses, we do not think that the court committed error in permitting the county attorney to ask these witnesses if they were members of organizations known as W. C. U. and I. W. W. This testimony might have been harmful to the defendant and beneficial to the prosecution. We presume that it was brought out for that purpose, but because testimony is hurtful to the adverse party is no reason for its exclusion, provided that it is otherwise relevant.

"It would be a dangerous precedent to hold that the state or the defendant could not, by way of cross-examination, show the relationship—fraternal, social, and otherwise—of the witnesses to the defendant or the prosecution, in order to disclose any motive for a possible or probable coloring of their testimony. A jury should know these things concerning the state's witnesses before they deprive an accused of his liberty or his life, and likewise they should be informed of the same objects of relationship and fidelity on the part of the defendant's witnesses before they turn loose on society a monster and a vandal.

"Admission of Improper Testimony.

"The county attorney placed on the stand a witness, Claude Broshears, who had testified favorably to the state

in the preliminary examination; his testimony making a clear case of guilt against the defendant. At the final trial this witness did not testify to the incriminating things which he testified in the preliminary examination; he testified to no incriminating act or circumstances against the defendant, but, on the other hand, he testified to nothing injurious to the state or the side which called him as a witness. In effect he was a neutral witness; he had testified to nothing requiring an impeachment; had he been impeached, the prosecution would have been exactly where it was before the impeachment. Notwithstanding this, the county attorney introduced in evidence all these statements in its former testimony favorable to the prosecution.

"This undoubtedly was manifest error, and is without support in a single judicial precedent. The universal rule is stated by this court in *Sturgis v. State,* 2 Okla. Cr. 362, 102 Pac. 57, in the following language: 'A party cannot impeach his own witness by introducing in evidence conflicting statements made by him, unless he shall testify injuriously to the party placing him upon the stand. The mere fact that the witness does not testify as the party expected him to do will afford no ground for the introduction in evidence of previous contradictory statements made by such witness.'

"The rule laid down in Jones' Commentaries on Evidence, volume 5, page 244, is to the same effect and is as follows: 'In a few jurisdictions it is held, even in the absence of statutes, that in the discretion of the court, if a party has been misled and surprised by the testimony of his witness, he may impeach him by proving his former contradictory statements. Under these statutes, the right of a party to impeach his own witness arises only when the witness testifies to some matter prejudicial to the party calling him.'

"This former testimony was not only introduced by way of questions and answers submitted to the witness, but the whole of it introduced in evidence and incorporated

into the record in the same manner as if the witness had
been dead, out of the state, or by due diligence could not be
found.   The admission of this testimony in part and as a
whole is condemned by all the laws and rules of evidence
and the decision of this court in numerous cases, holding in
substance with *Hawkins v. State,* 3 Okla. Cr. 652, 108 Pac.
562, which reads as follows:   'Before the testimony of a
witness * * * may be proved, * * * it must first be proved
that such former trial was had, that the witness was sworn
and testified, that the defendant was present and had an
opportunity for cross-examination, and that the witness
has since died, become insane, left the state, that he is sick
and unable to testify, or that his whereabouts cannot with
due diligence be ascertained.'

"Had the former statements of the witness been ad-
missible for the purpose of impeachment, the court's in-
struction pertaining to it was only a partial statement of
the law.   The instruction (No. 7) reads:   'The state has
been permitted to offer in evidence testimony of Claude
Broshears, taken in the preliminary trial in this case be-
fore C. J. Shields, justice of the peace, and in this con-
nection you are instructed that the sole purpose of the in-
troduction of this testimony was to impeach the testimony
of Claude Broshears in this trial, and cannot be considered
by you for any other purpose, and if you believe from the
testimony of the witness Claude Broshears, and the testi-
mony given by him in said preliminary trial, that he has
made such contradictory statements as to successfully im-
peach the witness Claude Broshears, then you are at lib-
erty to disregard the whole or any portion of his testi-
mony.'

"This instruction was incomplete. Cmmentators on evi-
dence, addressing lawyers and practitioners, do not stop at
saying that the former contradictory statements can be used
for impeachment purposes only, but invariably state that
it cannot be used as substantive evidence or to establish
the truth of the matter contained   in   the   contradictory
statement.   Jones on Evidence (The Blue Book) vol. 5, at

page 254, gleans from the adjudicated cases the following rule: 'Before closing this subject, attention should be called to the effect of impeaching testimony consisting of the contradictory or inconsistent statements of witnesses. It often happens that such testimony is of vital importance in its effect upon the credit of the witness, and it is not infrequent that jurors fail to understand that such testimony is only received to affect the credibility of witnesses. In other words, the impeaching testimony does not establish or in any way tend to establish the truth of the matters contained in the contradictory statements.'

"The authors of Corpus Juris, vol. 16, page 855, state the rule in this language: 'Where evidence is introduced or is admissible only to impeach either a witness for defendant, or defendant himself when he testifies, and is calculated to cause injury unless limited to such purposes, the court, particularly on request, should charge that this evidence shall be considered by the jury only on the question of the credibility of the witness or defendant, and not to show the guilt of defendant.'

"No case on this point is more unambiguous than is *Sturgis v. State, supra,* in which this court said: 'When contradictory statements made by a witness are admissible in evidence for the purpose of impeaching him, they must be confined to contradictions of the testimony of the witness which are injurious to the party seeking to impeach him, and it is the duty of the court to clearly inform the jury that such statements cannot be considered as independent substantive evidence against or in favor of the defendant, and that the jury can only consider such contradictory statements for the purpose of affecting the credibility of the witness, if they decide that such statements do have this effect, and that it is unlawful for the jury to consider such statements for any other purpose.'

"The admission of this testimony was error of such a nature that no instruction could have cured it, but the defendant was entitled to an instruction expressly telling the

jury that they could not use and consider the testimony of Claude Broshears, given at the former trial, as a basis for determining the guilt of the defendant, but that it should be confined to the impeachment of the witness in so far as his testimony was injurious to the state.

"Respectfully submitted,

"S. P. FREELING,

"*Attorney General.*

"W. C. HALL,

"*Assistant Attorney General.*"

A careful examination of the record has been made by the court, and the conclusion is reached that the defendant did not receive that fair and impartial trial which is accorded to him by the Constitution and statutes of this state. As stated by the Attorney General in his brief and confession of error, the evidence against this defendant, with the exception of the testimony given by his son in the preliminary examination, was wholly circumstantial. The evidence given by the son could only be considered for the purpose of his impeachment as a witness upon the trial, and not in any sense as substantive evidence of the guilt of the defendant. In considering, therefore, the sufficiency of the evidence to sustain the conviction in this case, the court must eliminate entirely from its consideration that portion of the evidence which was introduced by the state over the objection and exception of the defendant containing the testimony of the witness Claude Broshears, as given in the preliminary examination. With this evidence eliminated, the court reaches the conclusion that there is an entire insufficiency of evidence to sustain the conviction. The circumstances testified to by other witnesses, while

of a very suspicious character, do not meet the well-established rule of law that, in order to be sufficient to sustain a conviction based solely on circumstantial evidence, the circumstances must be consistent with the guilt of the defendant and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of his guilt.

The circumstances testified to by the witnesses, other than the evidence of Claude Broshears given at the preliminary trial, might be said to be consistent with guilt; but they cannot be held to be inconsistent with any other reasonable hypothesis than that of guilt, unless they are linked together and considered in connection with the direct evidence of guilt testified to by the witness Claude Broshears on the preliminary hearing.

At the conclusion of the state's evidence, counsel for the defendant interposed a motion for a directed verdict. The court refused to direct the jury to return a verdict of not guilty on the ground of insufficient evidence, to which action proper exception was taken at the time, and this is one of the grounds urged for a reversal of this judgment. The motion for a directed verdict of not guilty should have been sustained.

It may be added, also, that the court concurs in the view expressed in the confesson of error filed in this case by the Attorney General, to the effect that it was prejudicially erroneous for the trial court to permit the state to read in its entirety the evidence given by Claude Broshears in the preliminary examination of this defendant. This the court permitted to be done on the ground that the prosecuting officers were surprised by the testimony of

Claude Broshears given upon the trial. There is a very meager showing of surprise; the only witness introduced being the assistant county attorney, who testified on that subject as follows:

"Q. Your name is L. A. Wallace? A. Yes, sir.

"By Mr. Carter: We object to the introduction of any testimony by this witness for the reason his name is not indorsed on the information; we had no knowledge or information he would be called as a witness.

"By Mr. Eaton: It is for the purpose of laying a foundation for the reading of Claude Broshears' testimony taken at the preliminary.

"By the Court: Objection overruled.

"By Mr. Carter: We except.

"Q. You are assistant county attorney of this county? A. Yes, sir.

"Q. You know Claude Broshears? A. Yes, sir.

"Q. I will ask you, Mr. Wallace, if you were present in the clerk's office, this week, the day this case was called for trial, when the county attorney called Claude Broshears into the clerk's office and had a talk with him? A. I was.

"By Mr. Carter: We object to that as incompetent, irrelevant, and immaterial, because the witness Claude Broshears testified to the same fact.

"By the Court: It is purely a preliminary question, I imagine, Mr. Carter; objection overruled.

"By Mr. Carter: We except.

"Q. I will ask you if you heard the county attorney ask Claude Broshears if he was going to give the same testimony he gave at the preliminary hearing? A. Yes, sir.

"Q.   You may state to the jury what his answer was.

"By Mr. Carter:   Objected to as incompetent, irrelevant, and immaterial.

"By the Court:   Objection overruled.

"By Mr. Carter:   Exception.

"A.   If I remember the conversation, it was like this: The witness yesterday morning was called into the clerk's office—

"Q.   You don't mean yesterday morning?   A.   I believe it was yesterday morning.

"Q.   To refresh your memory, the case was called yesterday morning.   A.   Probably the day before; any way, just before we went into this trial, or soon before. Mr. Eaton asked him if he was going to tell it here just like he did before.   He says, 'Yes, I guess so; why?'   Mr. Eaton said, 'I just want to know if you were going to testify like you did before.'

"Q.   Who else was there present at that time?   A. Don Stormont was there; not sure whether Mr. Bailey was in the room or not.

"Q.   I will ask you if you heard him make this statement:   'I would know what he testified to when he got on the witness stand.'

"By Mr. Carter:   Objected to as incompetent, irrelevant, and immaterial.

"By the Court:   Overruled.

"By Mr. Carter:   Exception.

"A.   I believe something like that was said; not sure. The way I remember the conversation, you asked him if he was going to testify like he did before; he said, 'Yes; why?'

"Q.   Did he say anything about not letting me know what he was going to swear until he got on the witness

stand? A. I believe he did say something about he would tell you when he got on the witness stand."

An analysis of the assistant county attorney's testimony as given above shows that there was a feeling of uneasiness on the part of the prosecution that the said Claude Broshears was likely going to change his testimony to some extent when called as a witness at the trial. When asked if he was going to testify to the same facts at the trial that he did at the preliminary, his answer was, "Yes, I guess so; why?" and after being told that the county attorney wanted to know if he was going to testify like he did at the preliminary, his only further answer was that he would tell him (the county attorney) when he got on the witness stand.

Without any further investigation as to what the witness Claude Broshears' testimony would be at that time, the county attorney placed him upon the witness stand as a witness for the state. The evidence of Claude Broshears at the trial proving unsatisfactory to the county attorney, and to a certain extent contradictory to the evidence given by said witness at the preliminary, the county attorney on the above showing of surprise was permitted to read the entire evidence given by said witness at the preliminary examination. The county attorney was not confined to those questions and answers which were contradictory of the evidence of the witness given at the trial, and which were prejudicial to the defendant, but was allowed to read the entire evidence of the witness, as heretofore stated. This action upon the part of the trial court we think was also clearly prejudicial to the substantial rights of the defendant. Despite the court's instruction that such evidence should only be considered for the purpose of impeaching

the witness Claude Broshears, in order to arrive at a verdict of guilty, the jury must have considered it as substantive evidence of guilt. Without such evidence of guilt, there was no sufficient competent evidence. to sustain the conviction. It is clear to this court, therefore, that the evidence of Claude Broshears, given at the preliminary examination, must have had a controlling influence with the jury in reaching a verdict of guilty in this case.

The crime committed here was a most diabolical one. It was a successful effort to destroy the source of the water supply to the incorporated town of Dewar. Its effect was to disorganize the orderly procedure of the government of said town, and to deprive its citizens of a sufficient supply of water, which was badly needed, especially at the time the crime was committed—in the middle of summer. Parties guilty of such an offense as this should meet the severest penalty of the law; but whatever prejudice the court may have against the crime itself should not influence its decision upon the question of affording one accused of such a crime a fair and impartial trial.

For the reasons stated, the judgment of conviction is reversed, and the cause remanded to the superior court of Okmulgee county, with instructions for further proceedings not inconsistent with this opinion.

DOYLE, P. J., and ARMSTRONG, J., concur.