## B. O. SHEPHERD v. STATE.

No. A-7898. Opinion Filed May 29, 1931.
Rehearing Denied June 19, 1931.
(300 Pac. 421.)

Hudson & Hudson and McCollum & McCollum, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Pawnee county, on change of venue from Tulsa county, of manslaughter in the first degree and was sentenced to serve a term of 35 years in the state penitentiary.

In August, 1929, one Robert Hatcher was shot and killed in the apartment of Alice Andrews in Tulsa. She was a stenographer who for a short time had been in the employ of defendant. Hatcher was paying her some attention and they had been engaged to marry. Defendant, a married man, was in the real estate business. A few days before the homicide, accompanied by the Andrews girl, he had rented the apartment for her which she had occupied but a day or so. On the Saturday before the homicide, on Tuesday, defendant and the Andrews girl had lunch together at the apartment, during which Hatcher came and knocked on the door. She went to the door and told Hatcher to leave and to return in about 20 minutes. Defendant became peeved and told the Andrews girl she was discharged, to come to the office Monday and he would pay her off. On Sunday he returned to the apartment, apologized, and told her to come back to work Monday which she did. On Monday, Hatcher called the office by telephone and asked her to have lunch with him, but she declined. Just before noon he came to the office. Defendant and Hatcher became angry, engaged in a quarrel about the girl, and cursed each other. Defendant called the police, but at the request of the Andrews girl, Hatcher left before they came. Defendant then left the office and later returned with a pistol. That afternoon the Andrews girl gave the key to the apartment to Hatcher; later in the afternoon defendant told her he was going to watch the apartment to see that Hatcher did not come there. On Tuesday, at defendant's suggestion, he

and the Andrews girl again decided to have lunch at the apartment. As they got in the car, defendant put a pistol in the right-hand pocket of the car. They made some purchases, and on arriving at the apartment with the bundles the Andrews girl saw the pistol in one of the paper sacks carried by defendant. The place was locked and they were unable to get in. Defendant directed the girl to return to the office, stating he would call her back. Defendant called the janitor, who had a small boy enter and open the apartment. What occurred after defendant entered is shown by his testimony at the trial, by proof of statements made by him immediately after the homicide, and by the physical facts. From these sources it appears that after entering the apartment a single shot was fired from the pistol belonging to defendant, which inflicted a mortal wound on Hatcher, and which rendered him incapable of speech or action, and from the effect of which he died within an hour. Defendant testified in substance that he did not fire the shot, that when he entered the apartment he set down the packages and turned around as he was accosted by Hatcher, who was in the bathroom and was pointing a pistol at him. That Hatcher approached, and when he got near defendant shouted and grabbed his arm and turned the gun which was discharged, and at the same time defendant was knocked loose and made his way out on his hands and knees, but stopped at the entry and looked in and saw Hatcher struggling and crying out to call the ambulance, that he was shot. When others arrived, the body of Hatcher was on the floor with the pistol lying near. There is evidence of contradictory statements made by defendant, some conflicting testimony, and numerous circumstances not detailed.

It is argued that the court erred in overruling the defendant's application for a directed verdict and to advise

the jury to return a verdict of not guilty. Where an accused is on trial on a charge of murder, the court should rarely direct a verdict of acquittal. It is only in those cases where there is absolutely no evidence of guilt which tends reasonably to sustain the charge that it is the duty of the court to advise the jury to return a verdict in favor of the accused. The court was eminently correct in this case in denying such request.

Complaint is made that the court permitted the state to offer evidence of experiments without laying a predicate to show the experiments were made under conditions similar to those existing at the time of the homicide. The state's evidence discloses that there were no powder burns on the body nor on the shirt worn by deceased at the time he was shot. The theory of the defense being that the shooting was accidental, this evidence was offered by the state to show the pistol was farther from deceased at the time it was discharged than the defense claimed. Witnesses Mercer and Cockrell, police officers, testified they placed shirting material on the side of a wooden box and fired at it at a distance of 6, 15, 24, and 36 inches, and the results of such shots as showing powder burns. Defendant contends this was inadmissible in failing to show the similarity of the shirting material with that worn by deceased, its condition as to being dry, damp, or wet, or the kind of shell or powder used, citing 10 R. C. L. 1002, 1003; Gibbons v. Territory, 5 Okla. Cr. 212, 115 Pac. 129. The Gibbons Case and authorities cited state the extreme rule which has been relaxed to some extent in later cases. In Irby v. State, 18 Okla. Cr. 671, 197 Pac. 526, 530, a case in which the absence of powder burns was a material question, it was said:

"As a general rule an experiment introduced for the purpose of proving that the alleged result is obtained by

a certain act or operation, considered as existing in the case, should not be permitted unless the condition and circumstances under which the experiment is made are similar to those shown actually to have existed in the case. However, if the evidence shows that the experiment was made under circumstances similar, or approximately similar, to those which surrounded the original transaction, and such experiment would serve to shed any light upon that transaction, it would be admissible, although such experiment might not have been made under exactly similar conditions as attended the original transaction. The want of exact similarity would not exclude, but would go to its weight with the jury. 1 Michie on Homicide, p. 832, and cases cited. Where the competency of evidence of experiments depends upon similarity of circumstances and conditions, the question is one for the court to determine. We are satisfied that the court did not err in admitting evidence of the experiments as tending to shed some light on the firing of the fatal shot, and its weight was for the jury to determine."

The general rule as to the admissibility of the result of experiments is, if the evidence would tend to enlighten the jury and to enable them to more intelligently consider the issues presented and arrive at the truth, it is admissible. The experiment should be under circumstances similar to those prevailing at the time of the occurrence involved in the controversy. They need not be identical, but a reasonable or substantial similarity is sufficient. Several courts have held that the lack of identity of circumstances affects only the weight and not the competency of the evidence provided there is a degree of similarity which will assist the jury. 22 C. J. p. 755, §§ 842, 843, 850, and 852, notes; Clark v. State, 38 Tex. Cr. R. 30, 40 S. W. 992; Spires v. State, 50 Fla. 121, 39 So. 181, 7 Ann. Cas. 214.

The experiments here were not made under identical conditions, but were under such reasonably similar con-

ditions as would tend to throw light on the point in controversy and to assist the jury to arrive at the truth. Evidence of experiments are not conclusive; they are circumstances to be considered, weighed, and determined by the jury along with the other evidence in the case. The court did not err in admitting this evidence.

Defendant also insists that the admitting in evidence of a bloody shirt purporting to have been worn by deceased at the time he was shot was not in support of any issue, but was calculated to prejudice and inflame the minds of the jurors against defendant. There is some argument that this garment was not properly identified. At the time this shirt was presented for identification, defendant's counsel objected that it shed no light upon the issue and offered to stipulate that the bullet made its entrance and exit of the body of deceased as the witnesses testified. The right of the state to prove its case cannot be taken away, or the force of the evidence weakened, by an admission or stipulation of the facts sought to be proven any more than the right of a defendant to present evidence tending to prove an affirmative defense can be taken away by stipulation. The garment was admissible as showing the location of the wound and as showing powder burns or the lack thereof.

We are pressed with the argument that the state was permitted to ask impeaching questions and to impeach its witness Alice Andrews without any showing of surprise at her testimony. This witness was used by the state both on the preliminary and at the final trial. After the trial and in support of the supplemental motion for a new trial, she furnished a lengthy recanting affidavit which will be referred to later. Under the entire record, we should say this witness was friendly to defendant. There

is no particular controversy as to the general rule that a party cannot impeach his own witness by proof of prior contradictory statements where such party has not been misled or deceived into placing such witness on the stand, but may impeach his witness only when he has been deceived or entrapped into using the witness, believing the witness will testify to a favorable state of facts, and who then, contrary to such belief, testified unfavorably. Paris v. U. S., 5 Okla. Cr. 601, 115 Pac. 373; Broshears v. State, 17 Okla. Cr. 192, 187 Pac. 254; Darden v. State, 42 Okla. Cr. 6, 273 Pac. 1027. The particular point involved in the testimony of this witness is that on the day deceased was shot, as she and defendant left the office to go to the apartment, defendant put a pistol in the pocket of the car which she saw in the paper sack when they arrived at the apartment. On cross-examination she testified, on the day before, she took the pistol defendant had brought to the office to her apartment and put it on the table. Counsel for neither the state nor the defendant asked her if she took it back to the office or if defendant did so. Both appear to have studiously avoided asking that. The questions in the main are without objection, and in part as follows:

"Mr. Wallace: Q. Now on that evening, Monday evening, you say you saw Shepherd put that gun in the safe? A. No, sir, I didn't see him put it in there, I found it there.

"Q. You found it there? A. Yes, sir.

"Q. Now you testified in the preliminary trial, didn't you? A. Yes, sir.

"Q. I will ask you if you didn't say that Shepherd brought the gun in there, and that you never saw what he did with the gun or where he put the gun? A. I didn't see where he put it.

"Q. I will ask you if you didn't further state that you never saw that gun any more until you saw Shepherd put it in the pocket of his car. You testified to that at the preliminary, didn't you? A. I don't know, I guess I did. * * *"

An objection was then made, and a colloquy arose, and the assistant county attorney, Wallace, testified before the court in the absence of the jury in substance that the witness in her former testimony had made contradictory statements. Upon the return of the jury this was not offered by the state, but later defendant's counsel asked that it be admitted in evidence. The following appears:

"Mr. R. D. Hudson: I want to know if, for the purpose of the record now, Mr. Wallace, if you and I may agree—you and I have both read this stuff out of the record, if we may agree that the portions of the record that Mr. Wallace has read, the preliminary record for impeaching purposes and the part I have read may be considered as offered in evidence.

"The Court: Yes.

"Mr. R. D. Hudson: Let the record show that counsel for the state and for the defendant both, in open court, stipulate and agree that it may be considered by the court that all questions and answers read either by the county attorney or by counsel for the defense, in laying the predicate for impeaching questions, may be, and the same are hereby considered in evidence, and may be read to the jury as such. That is correct, isn't it?

"Mr. Wallace: Yes.

"The Court: Very well. * * *"

He cannot now be heard to complain that any of the testimony of Wallace, including the testimony read by either was prejudicial for if error it was invited error. Following the cross-examination of this witness, she was

questioned on redirect examination by the state, over objection, at some length as to her previous testimony and statements. In a large measure this is a repetition of what already had been testified to without objection or had been read. We see no material impeachment or attempt to impeach, but an attempt to rebut the inference sought to be made that if she took the pistol to the apartment on Monday defendant could not have had it with him when he went to the apartment on Tuesday at the time Hatcher was shot. Both statements, that the witness took the pistol to the apartment, and that defendant on the next day had it, may be true.

The argument is made that instructions 7, 8, 11, 12, 13, 14, 15, 16, 17, 18, 22, and 23. are erroneous and inapplicable, in that the court instructed on the law of self-defense, when the defendant made no claim of self-defense, but denied he took the life of deceased and sought in no way to mitigate or justify the killing. The plea of self-defense is a plea of justifiable homicide and amounts to a plea in civil law of confession and avoidance. If an accused did not commit an act, he is not required to justify it. It is settled by many decisions from this court that it is error for a trial court to assume in his instructions a disputed material question of fact. The case of Forrester v. State, 45 Okla. Cr. 205, 282 Pac. 682, was reversed because the trial court in that case assumed that defendant admitted the homicide and claimed that he acted in self-defense, when as a matter of fact defendant denied he committed the homicide and did not seek to justify or excuse it. This is but another way of saying that the instructions should be applicable to the issue raised by the pleadings and testimony.

In the record before us defendant testified to a conflict or struggle with deceased, that deceased at the time

attempted to shoot defendant with a pistol, which in the struggle defendant turned about the time it was discharged and which caused the death of deceased; the death to this extent being accidental. The court is not required to frame the instructions on the theory of defendant alone but upon the evidence as an entirety. In instruction 7 the court stated the issues as raised by the plea and the evidence, limiting it to the claim of defendant that the grappling with deceased by defendant was an act of self-defense but that the killing was accidental. This instruction is:

"In this case the defendant, B. O. Shepherd, as his plea and for his defense, says that at the time of the struggle between the deceased and the defendant, the defendant was acting in his own necessary self-defense and that the killing of the deceased was accidental."

In none of the instructions does the court assume that defendant admitted that he shot deceased or that in fact he shot deceased. Whether or not defendant shot the deceased is left entirely to the jury. The instructions are not erroneous.

The only remaining assignment of error requiring special discussion is that the court erred in overruling the motion for a new trial on the ground of newly discovered evidence. This motion, supported by an affidavit of defendant, is in substance that since the trial he has learned that the witness Alice Andrews, prior to and at the time of his trial, was under duress of certain officers and believed that unless she testified as she did she would be charged with perjury. That if a new trial were granted the witness Alice Andrews would testify to a different state of facts, favorable to defendant. This motion is supported by an affidavit of the witness Alice Andrews at considerable length detailing her relations with Hatcher

and recanting, to some extent her testimony, and particularly her testimony that defendant took a pistol to the apartment at the time of the homicide, and stating that immediately preceding the homicide she did not see defendant put a pistol in the pocket of the car nor see a pistol in the sack at the apartment.

A conviction, generally, is not to be overturned by the ex parte affidavit of a witness that he committed perjury or did not testify fully in the trial of the case. A motion for a new trial on the ground of newly discovered evidence predicated upon an affidavit of the witness that he testified falsely or failed to testify fully in the trial of the case, does not entitle the defendant as a matter of right to a new trial. When such a showing is made, the trial court should exercise a sound discretion and determine if the recantation is probably true and, if so, is sufficiently material that another trial would probably result in the acquittal of defendant. Unless he can answer both questions in the affirmative, the motion should be overruled. Ryal v. State, 16 Okla. Cr. 266, 182 Pac. 253; Martin v. State, 34 Okla. Cr. 274, 246 Pac. 647.

We are of the opinion that the trial court wisely exercised his discretion in overruling the motion for new trial on the ground of newly discovered evidence.

We realize fully the importance of this case to defendant and have given the record careful consideration. Defendant has been represented by very able counsel, who have safeguarded fully all his rights. Nothing has been overlooked. We find nothing in the record which would warrant this court in disturbing the judgment.

The case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.