Thomas L. **JOHNSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–16172.

Court of Criminal Appeals of Oklahoma.

Feb. 14, 1973.

Rehearing Denied March 6, 1973.

James O. Goodwin, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Gary M. Bush, Asst. Atty. Gen.. for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Creek County, Case No. CRF–69–82, the appellant, Thomas L. Johnson, hereinafter referred to as defendant, was charged and tried for the offense of Murder and convicted for the lesser included offense of Manslaughter in the First Degree. The defendant's punishment was fixed at eight (8) years imprisonment. From that judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Jack McKenzie, an investigator for the District Attorney of Creek County, testified that on October 6, 1969, he was called to investigate a reported homicide at the Helen Pete residence, on Highway 16 three miles east of Slick, Oklahoma. He identified State's Exhibit No. 1, a schematic diagram of the premises, specifically pointing out particular circumstances relating to this offense and the property generally. During his testimony,

he pointed out the location of the dining room and the fact that a person seated at the dining room table would have full view of the doorway at the front of the house.

Ricky Dean Cole testified that on the 5th day of October, he was present at a birthday party given for his grandmother, Helen Pete. Late in the evening, while seated at the dining room table, he observed through the front door, the defendant and Helen Redeau, hereinafter referred to as deceased, involved in an altercation on the front porch. This altercation climaxed with the deceased ripping buttons and fabric from the front of the defendant's shirt. While the deceased remained on the front porch, the defendant backed to a two-seated divan located in the living room, retrieved a firearm from between the seats, walked a short distance toward the door and fired the weapon at the deceased. After the gun discharged, the deceased fell in front of the door on the front porch. Ricky further testified that he observed his sister find an empty shell casing and portion of fabric.

Trooper Kent Douglas Thompson testified that on this date, he and his partner, Trooper Doug Nichols, were dispatched to the Helen Pete Bar. Upon arrival, he observed the deceased lying on the porch with what appeared at first to be only a bullet wound in the upper portion of her left arm. He returned to the cruiser with Nichols still remaining inside. While Thompson was standing near his cruiser, the defendant approached him and stated "I believe I am the person you are looking for." Thompson summoned Nichols and they inquired about the firearm used in the incident. The defendant responded stating it was in his right front pocket. Nichols removed the gun from his pocket. The defendant was given his constitutional rights, placed under arrest, and transported to the police station.

Trooper Doug Nichols testified that on the scene the defendant was clad in a torn blue checked shirt and khaki pants. He stated that prior to placing the defendant under arrest, he removed a .32-caliber au-

tomatic, State's Exhibit No. 2, from the defendant's right front pocket. While the defendant was being transported to the department, subsequent to proper Miranda warnings, the defendant related two variations of what transpired during the incident. First he stated he had become involved in an altercation with the deceased with his gun discharging during the scuffle. His second narration revealed the gun discharged after she removed it from his pocket. Nichols further testified that he and Sheriff Brice Coleman returned to this scene three and one-half hours after they arrived on the scene of the incident. A search at this time revealed no physical evidence.

Roy Lambert, firearms examiner for the Oklahoma State Bureau of Investigation, identified State's Exhibit Nos. 2, 7 and 8. He stated his tests revealed that State's Exhibits 7 and 8, respectively the bullet removed from the deceased and the cartridge, were fired from State's Exhibit No. 2. Further, State's Exhibit No. 9, the deceased's blouse worn on this evening, had no powder markings on it indicating the gun was discharged more than three feet from the deceased.

Dr. Robert M. Fogel, a pathologist, testified he performed a post-mortem on the deceased and found the cause of death to be the gunshot wound. Further, he stated the bullet entered the body of the deceased at an approximate twenty degree angle and that there were no powder burns on the deceased's body. The State rested.

Helen Pete testified that on the 5th of October 1969, the party previously mentioned was given her in her home. Five to ten minutes following the close of the party, while she was in the process of preparing her grandchildren for bed, she heard what she determined to be an altercation on her front porch. She testified that during the altercation she overheard the defendant state to the deceased, "don't do that, you're wrong." (Tr. 199) Shortly thereafter, she heard a gunshot. She walked from the bedroom and found the deceased lying on the front porch. After attempting to make the deceased more comfortable, she walked the defendant to her bedroom and attempted to settle his nervous reaction from the incident.

Irvena Cole testified to facts substantially as Mrs. Pete did adding further that on the morning following the incident, while en route to school, she found one-half of a blue checkered shirt, a watch band, and a .32-caliber shell casing on the steps to the front porch of the house mentioned.

Prior to relating the details of the incident, the defendant testified he was a Tulsa resident and maintained a part-time residency in Beggs, Oklahoma. He testified to the events which transpired during the day prior to the incident. Further, he stated that during the years of 1958 through 1960 he dated the deceased fairly regularly. Also he stated that since 1960 the deceased had made numerous assaults on him with different types of weapons. Finally, he denied paternity to any of the deceased's twelve children.

His version of the details of the incident, in summary, was that he had two beers and two highballs during the party. Further, he stated that throughout the evening he wore State's Exhibit No. 2 in his belt. At the conclusion of the party, he left the house through the front door. As he reached the front gate, he was confronted with the statement, "you son of a bitch, I'm going to kill you." (Tr. 247) He turned, ran, and was pursued by the deceased. When he reached the steps to the porch, he was grabbed from the rear by his shirt and thrown off his balance. While off his balance, his hands were thrown into the air, he caught the gun with his right hand, and simultaneously it discharged striking the deceased in the left side.

Reverend E. E. Holly, Marshall Dejear, Mr. and Mrs. Roger Gladney, Mrs. Carrie Hammond, and Mr. Harry Bevins testified they knew the defendant to have a good reputation in the community.

Dale Smith, a Beggs mathematics teacher, qualified as an expert on trigonometry, testified refuting State's evidence on the point in the room where the gun was discharged. The defense rested.

In rebuttal, Sheriff Brice Coleman testified that his subsequent investigation of the premises at approximately 1:30 a. m. on the 6th of October revealed no physical evidence on the front porch step of the house in question.

Freddie Lee Pete testified the defendant was dating the deceased in 1968.

Shirley McCargo testified that the defendant generally had a bad reputation in the community.

Mrs. Jewel Savage testified the defendant admitted to her paternity of one of the children of the deceased.

Thereafter, the State and the defense rested.

■ In the defendant's first proposition, he assigns as error the court's denial of an excusable homicide instruction, asserting that the evidence of the defense invoked this defense and placed a duty on the trial court to give the instruction in support of the defendant's theory. Title 21 O.S.1961, § 731 sets forth the criteria for establishing this defense as follows:

"Homicide is excusable in the following cases:

"1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent.

"2. When committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat provided that no undue advantage is taken, nor any dangerous weapon used, and that the killing is not done in a cruel or unusual manner."

Necessarily, as a prerequisite to requiring the court to instruct on the above defense, the evidence must be sufficient to support such an instruction. Swarb v. State, Okl. Cr., 358 P.2d 850 (1961).

In applying this statute to the instant case, we note that by the nature of the evidence presented by the defense, the second paragraph of this statute is not invoked as authority for the excusable homicide defense. It is of necessity from the first paragraph of the statute that we derive the authority for a possible instruction on excusable homicide.

In construing the first paragraph, it is our interpretation that an accidental homicide is excusable when it occurs in lawfully correcting a child or servant. Furthermore, more applicable to this case, an accidental homicide is excusable when the defendant is doing a lawful act, by lawful means, with usual and ordinary caution, and without unlawful intent. Therefore, in the instant case, the question to be resolved is whether the evidence supports an instruction under one of the above circumstances.

■ Title 21 O.S.1961, § 1272, the gun possession statute in force at the time this offense was tried, states as follows:

"It shall be unlawful for any person in the State of Oklahoma to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, switch-blade knife, spring-type knife, knife having a blade which opens automatically by hand pressure applied to a button, spring, or other device in the handle of the knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided."

In Adams v. State, 93 Okl.Cr. 333, 228 P.2d 195 (1951), this Court stated in the fifth paragraph of the Syllabus: "Accidental death, to be wholly excusable, must have *resulted* from the doing of some lawful act." (Emphasis added)

■ The evidence received in regard to this defense at the trial is uncontroverted. The defendant, by his own admission, was carrying this firearm on his person throughout the entire evening and at the time the gunshot, which resulted in the

casualty, occurred. By the nature of the prerequisite requirements of invoking this defense, as previously mentioned, it is apparent that the defendant's evidence does not support such an instruction. The evidence by the defense does indicate a showing of an accidental death but the evidence does not show the defendant to be involved in some lawful act, by lawful means, with usual and ordinary caution, without any unlawful intent. The possession of the firearm, under the circumstances of the instant case, resulted in a casualty and this possession was unlawful. Since the defendant admits being engaged in an unlawful act, which resulted in a death, there is no question of fact for the jury in determining whether or not the defendant was engaged in lawful conduct. Therefore, the evidence required to support this instruction was not present and the court properly refused to instruct on excusable homicide.

In the defendant's second proposition it is urged that the court misdirected the jury by giving an instruction on the misdemeanor of carrying a concealed weapon and charging the jury with determining whether or not this misdemeanor was the proximate cause of the homicide. Counsel asserts that as a matter of law, the carrying of a concealed weapon could not have been the proximate cause of the homicide and that the misdemeanor of carrying a concealed weapon is not contemplated by the misdemeanor statute.

In the case of Stumblingbear v. State, Okl.Cr., 364 P.2d 1115 (1961), the Court generally held that the unlawful act relied upon as a predicate for manslaughter must be the proximate cause of death. Further, the Court held that the misdemeanor and the death must be closer and more convincing than the coincidental occurrence of both happenings. We note further that the Court's discussion in the *Stumblingbear* case revolved around the defendant's theory that the misdemeanor committed was not the cause of death, but that the cause of death resulted from the victim falling against and striking his head upon a boxcar wheel after the defendant left the scene. In the Syllabus of this case, the Court stated:

"In manslaughter prosecution, ordinarily the jury should be instructed in substance that if they have a reasonable doubt as to the unlawful act being the proximate cause of death, they should acquit. In such case the instruction need not be in any particular words, so long as the jury is correctly informed that the unlawful act must be the proximate cause of death."

In the case of Welborn v. State, 70 Okl.Cr. 97, 105 P.2d 187 (1940), the defendant was charged with murder and convicted of manslaughter. The jury was instructed under the misdemeanor-manslaughter rule and the misdemeanor the defendant was accused of was carrying a pistol in violation of the Oklahoma law. During the trial, the defendant admitted the commission of the homicide but claimed the deceased was accidentally shot while they were engaged in a scuffle for the possession of his pistol, which he was carrying in his belt. The Court upheld this conviction for the offense of manslaughter in the first degree generally holding that the evidence sustained a first degree manslaughter conviction of a person who was carrying a pistol in violation of a statute making it a misdemeanor, when this person fired the fatal shot.

We find sufficient relationship between the offense of carrying a weapon as quoted earlier in this Opinion and a homicide resulting from the discharge of the same weapon carried upon the defendant's person. It is obviously within the legislative intent of an act prohibiting the carrying of a weapon to alleviate or to a degree reduce the danger of both accidental and intentional deaths. We do not find that *Stumblingbear, supra,* as the defense suggests, places the offense of carrying a concealed weapon outside the realm of the manslaughter statute when this question of proximate cause is submitted to the jury on a proper instruction, as was done in the instant case.

In the defendant's third proposition, he assigns as error the court's failure to give an instruction on manslaughter in the second degree. He contends that by the defendant's conduct, carrying a loaded weapon in the presence of children and adults, at a birthday party where alcoholic beverages were being consumed, is sufficient evidence of culpable negligence to compel the trial court to instruct on second degree manslaughter.

■ In the case of Glenn v. State, Okl. Cr., 333 P.2d 597 (1958), Judge Nix was confronted with a situation similar to the one in the case at bar. In this case, the defense assigned as error the court's failure to give a second degree manslaughter instruction in an offense involving an individual charged and convicted for first degree manslaughter. Judge Nix noted that there was no request by counsel for such an instruction nor was an exception taken at this point. Judge Nix stated that there would have been merit to the defendant's contention had a request been made, but in the absence of a request under the circumstances as revealed by the record, the defense manifested it was satisfied with the instructions as to this question. The Court, quoting from Williams v. State, 12 Okl.Cr. 39, 151 P. 900 (1915), stated:

"If upon the trial of a criminal case special instructions are desired by the defendant, he is required by the provisions of our Code of Criminal Procedure to present in writing to the court the instructions desired, and it is not error for the trial court to omit to instruct upon every possible question under the defendant's theory of the case, when he has not requested such instructions."

We note that counsel for the defense made timely objections and submitted requested instructions on all other theories of law which he felt should have been submitted to the jury, save this theory. No objection being propounded by counsel, in light of the evidence suggested to be in support of this theory, we find that the trial court instructed the jury properly in regard to the omission of a second degree manslaughter instruction.

■ In the defendant's fourth proposition, the defense contends that the court erred in admitting a powder burns experiment wherein it was not shown that the exact type of cloth was used for the experimentation as was contained in the clothing which received the powder burn at the time of the actual crime. This exact same question was laid to rest in two authorities cited by the defendant. Shepherd v. State, 51 Okl.Cr. 209, 300 P. 421 (1931); Cooper v. State, 61 Okl.Cr. 318, 67 P.2d 981 (1937). In the Cooper case, the following statement was made in the second paragraph of the Syllabus:

"Experiments and tests when made under circumstances reasonably similar or approximately similar, to those which surrounded the original transaction, and such experiment or test would serve to shed any light upon that transaction, it would be admissible, although such experiment might not have been made under exactly similar conditions as attended the original transaction."

In both the Cooper case and the Shepherd case, the question was as to whether the cloth used in the experiment had to be the same as the cloth in the material involved in the crime. Both cases answered the question in the negative. The other authorities submitted by the defense involved distinguishable, factual situations. We, therefore, find this proposition to be without merit.

Therefore, the judgment and sentence is affirmed.

BUSSEY and BRETT, JJ., concur.