State v. Laney

Affirmed.

Judges PARKER and BALEY concur.

STATE OF NORTH CAROLINA v. JOHNNY JHUE LANEY

No. 7420SC303

(Filed 15 May 1974)

1. **Criminal Law § 89— inadmissibility of question to show bias**

    In this homicide prosecution, a question to a State's witness as to whether he had called his wife and told her that defendant had killed his wife and "I'm going to kill you" was not admissible to show bias on the part of the witness by showing that he had an intimate friendship with the deceased since such a conclusion on the part of the jury would be mere speculation.

2. **Criminal Law §§ 38, 57— testing of gun — admissibility of testimony**

    In this homicide prosecution, testimony by the State's firearms expert that he studied the gun used in the crime for defects, that he did not find any defects as to the mechanical operation of the weapon and that he had no difficulty in firing the gun was not testimony as to an experiment conducted to determine if defendant's version of the killing could have occurred and was properly admitted by the court.

APPEAL by defendant from *Kivett, Judge,* 17 September 1973 Criminal Session of Superior Court held in STANLY County.

Defendant was charged in a bill of indictment, in proper form, with the murder of his wife, Doris Faye Mullis Laney, on 7 August 1973. He pleaded not guilty, contending that death resulted from accident or misadventure. The jury returned a verdict of guilty of involuntary manslaughter, and he appealed from the entry of judgment imposing a prison term of ten years with credit for time spent in jail awaiting trial.

*Attorney General Robert Morgan, by Associate Attorney Archie W. Anders, for the State.*

*Coble, Morton, Grigg & Odom, by Ernest H. Morton, Jr., and Griffin & Humphries, by Jerry E. Griffin, for defendant appellant.*

State v. Laney

BRITT, Judge.

[1] Defendant first assigns as error the court's instruction that counsel not propound a certain question to one of the State's witnesses. The witness, who testified he had seen defendant enter the house trailer where the body of the victim was found, was asked, in conference and out of the presence of the jury, "Did you on the night of August 7th, 1973, call your wife, Earlene Furr and say, 'Johnny [the defendant] has killed Doris, and I'm going to kill you'?" The witness answered in the negative and then the court instructed defendant's counsel not to ask the question in the presence of the jury.

Defendant argues that the question would show bias on the part of the witness in that it would show he had an intimate friendship with the deceased. Such a conclusion on the part of the jury would be mere speculation. Evidence which has no logical tendency to prove a fact in issue in the case is inadmissible. See *Godfrey v. Power Co.*, 190 N.C. 24, 128 S.E. 485 (1925), and 1 Stansbury, North Carolina Evidence, § 77, at 234 (Brandis rev. 1973). In addition, the witness answered in the negative, therefore, we can see no prejudice from excluding the question. The assignment is overruled.

On his second assignment of error, defendant contends the court erred in overruling defendant's objections to questions put to the State's witness, Frank G. Satterfield, Jr., a firearms expert with the S.B.I., for the reason that the State failed to lay a proper foundation. We find the assignment without merit.

As a witness for himself, defendant testified: ". . . I reached under my shirt and caught it [the gun] by the handle and pulled it out and was holding it in front of her, more or less in a parallel angle to her body . . . . As I was holding the gun, the [her] left arm came up and hit the gun and it went off. That's all I know . . . . I was holding the gun out in front of her and it was about a foot to a foot and a half in front of her person. I did not point the gun at her nor did I have my finger on the trigger at any time. I just reached down and got it by the stock . . . ."

Agent Satterfield was called as a rebuttal witness by the State. After testifying with respect to his background, including 18½ years with the S.B.I., the last two years of which had

been in the firearms section, Agent Satterfield, without objection, stated:

> "I am able to identify State's Exhibit No. 2 as a .22 caliber revolver by the name of Gecado. A revolver has a barrel of approximately 3⅜ inches in length and the land and groove specifications are 8 grooves with a right twist. The pistol is a double action and single action weapon. When I say single action, I mean with the hammer cocked and double action, I mean when the hammer is not cocked. We checked to see how much weight was required to pull the trigger in both positions by firing the weapon. With the hammer cocked, it required approximately 4 to 4½ pounds of pressure to pull the weapon. However, this would vary from cylinder to cylinder, but it was generally 4¼ to 4½ pounds. This was for single action firing. By double action firing, the trigger pull was in excess of 5¼ pounds because the weights that we have are limited to a pull of 5¼ pounds."

[2]   Thereafter, several questions were asked and objections thereto were sustained by the court, and a motion to strike an answer was allowed. Then, Agent Satterfield, over objection, testified that he studied the weapon for defects, that he did not find any defects "as to the mechanical operation of the weapon," and that he had no difficulty in firing the weapon. Defendant contends that this testimony was erroneously admitted and cites *State v. Phillips*, 228 N.C. 595, 46 S.E. 2d 720 (1948), and *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963).

In *State v. Phillips, supra,* page 598, we find: " 'The general rule as to the admissibility of the result of experiments is, if the evidence would tend to enlighten the jury and to enable them to more intelligently consider the issues presented and arrive at the truth, it is admissible. The experiment should be under circumstances similar to those prevailing at the time of the occurrence involved in the controversy. They need not be identical, but a reasonable or substantial similarity is sufficient'—*Edwards, J.,* in *Shepherd v. State,* 51 Okla. Crim., 209 300 P., 421."

While recognizing the rule restated in *Phillips,* we do not think the rule rendered inadmissible the evidence challenged here. It would appear that Agent Satterfield's testimony related more to *testing* the death weapon for defectiveness than it did to performing an experiment as was true in *Phillips*. We note

Board of Education v. Evans

again that a large part of the agent's testimony was not objected to, only his conclusion as to defects. We also think that the challenged testimony is distinguishable from that declared inadmissible in *Foust*. In the first place, in *Foust* the testimony relating to testing or experimenting with the weapon was objected to. Secondly, the testimony in that case more clearly tended to show an "experiment" than the testimony challenged here. Agent Satterfield in no way attempted to simulate the version of the occurrence as described by defendant, and then show that it could not have happened that way.

Defendant's third and fourth assignments of error relate to the court's charge to the jury. Considering the instructions as a whole, and contextually, we conclude that they were free from prejudicial error.

We hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges HEDRICK and CARSON concur.