STATE OF NORTH CAROLINA v. COUNCIL GRAHAM

No. 7816SC285

(Filed 19 September 1978)

### 1. Homicide § 30.3— necessity for instruction on involuntary manslaughter

The trial court in a homicide case erred in failing to instruct the jury on involuntary manslaughter where defendant testified that he fired one shot not aimed at anybody but intended to break up a fight, and that he then fired the fatal shot unintentionally when defendant came at him with a knife and he "throwed up the gun and it went off."

### 2. Criminal Law § 45.1— experimental evidence—cutting shirt with knife—circumstances not similar

In a homicide prosecution in which defendant testified that deceased had cut his shirt with a knife during the altercation which resulted in deceased's death, the trial court erred in permitting the district attorney to ask defendant to try to cut the shirt worn by defendant at the time of the incident with deceased's knife since the experiment was not conducted under circumstances substantially similar to those existing when defendant's shirt was allegedly cut by deceased.

APPEAL by defendant from *Lee, Judge.* Judgment entered 15 September 1977, Superior Court, ROBESON County. Heard in the Court of Appeals 15 August 1978.

Defendant was charged with murder. At trial, the district attorney announced that he would seek no greater verdict than a verdict of guilty of second degree murder. Defendant was convicted of voluntary manslaughter and appeals from the judgment entered on the jury verdict.

The State's evidence tended to show the following events:

Defendant, deceased, and several other people were at a house in Lumberton on Saturday night, 13 February 1977. The house was known as "Hole in the Wall", and, according to one witness, "a lot of drinking was going on there". Deceased and S. L. Graham got into a fight outside the house. They were separated by some of the people at the house, who took deceased about 30 feet from the house near some woods. He was "cussing and going on". S. L. Graham and defendant started toward deceased, S. L. Graham carrying a stick and Council Graham carrying a "blue-black revolver type gun". They were asked to stop before someone got hurt. They did so, and defendant turned and

went back into the house. Deceased started back to the house still "cussing and carrying on". Defendant came out of the house, and he and deceased began cursing at each other. Deceased was between two cars. Defendant walked over next to the car and shot across the roof of the car. Deceased "hunched down close to the roof and ducked his head down". State's witnesses testified that they saw deceased "do nothing with his hands". That shots hit a Ford Courier truck and a black Grand Torino. The cursing continued. One witness testified that deceased remained "crouched down" after the first shot and that defendant said: "Son of a bitch, I'll kill you", and walked around the car and shot deceased with the barrel of the gun only "a couple of inches" from deceased's head. Another witness testified that deceased "stooped down at the end of the car when the gun was fired. He then stood back up and continued to cuss at· Council. Council went around the back of the car and shot Willie". Both witnesses testified that deceased fell to the ground and that defendant walked away carrying the gun without offering any assistance to the victim.

Defendant testified that he "knew of" Willie Lee Lowrey before this incident but did not know him; that he had been to a cookout at Wyvin Locklear's that night, leaving about 11 o'clock; that after leaving the cookout, he went to the home of Brantley Chavis in Pembroke; that Brantley asked defendant to take him to his brother-in-law's place called "Big Johnny's"; that defendant had drunk only "a couple of beers" that night; that defendant, "Wyvin Locklear, Brantley Chavis, J. R. Graham, and S. L. Locklear (sic) . . . all went there together"; that after they got inside, a "little ruckus" started, and Willie Lee Lowrey hit Brantley Chavis "upside the head"; that as they were attempting to break up the fight, Willie Lee Lowrey pulled out a knife; that the knife was open, and Willie Lee swung it at defendant as defendant tried to break up the fight; that S. L. Graham grabbed Willie Lee, pulled him outside, and threw him on the ground; that the two men were pulled apart, and some others pulled Willie Lee away; that Willie Lee was saying, "I'm going to kill him the son of a bitch. I'm going to kill him"; that about this time, Willie Lee started at defendant who ran in front of a car to get out of his way; that defendant had pulled his gun out and "shot it trying to keep him away"; that he shot the gun up in the air, but Willie continued to come; that defendant was facing the automobile on the right hand

side "toward the front" and was not aiming at anybody when he shot; that two men grabbed Willie Lee, and defendant thought they had control of him and was attempting to get by him to his car, intending to leave; Willie Lee was between him and his car, still had the knife, and was still threatening defendant; Willie broke loose and began running at him with a knife; that Willie was right at defendant when he swung the knife at defendant and cut defendant's shirt and undershirt; that when Willie Lee came at him and tried to cut him, defendant "throwed up the gun and it went off and he fell and I touched to see if he was dead"; that he was told that Willie Lee was dead, and he tried to feel his pulse; that he figured there might be more trouble, so he told the others to tell the deputies he would be home when they came for him; that he then took the men home who came with him and went home.

Additional facts necessary for decision are set out in the opinion.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney Norman M. York, Jr., for the State.*

*Edwards and Johnston, by Rudolph L. Edwards, for defendant appellant.*

MORRIS, Judge.

[1] Defendant contends, by his fifth assignment of error, that the court erred in failing to charge the jury that they could return a verdict of guilty of involuntary manslaughter as a possible verdict. We are inclined to agree that defendant's evidence makes this instruction necessary. The State argues that the record reflects that defendant was the aggressor throughout the altercation and that, after shooting at deceased and missing him he moved closer and shot a second time, killing him. This is certainly what the State's evidence tended to show. However, the defendant testified for himself. His version was entirely different. He maintained that neither shot was fired *at* anybody. He said that when he fired the first time, he did not aim at anybody. As to the fatal shot, he said that as deceased was coming at him, "he throwed up the gun and it went off".

"Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, *and without intention to kill or inflict serious bodily injury.* [Citations omitted.]" *State v. Wrenn,* 279 N.C. 676, 682, 185 S.E. 2d 129, 132 (1971).

Here the defendant's testimony was, in its entirety, a version of an *unintentional* killing. He fired two shots, the first aimed at no one but intended to break up a fight, and the second, accidentally when "he throwed up the gun and it went off". If believed by the jury, defendant's evidence is sufficient to support a verdict of guilty of involuntary manslaughter. *See State v. Davis,* 15 N.C. App. 395, 190 S.E. 2d 434 (1972) (where defendant testified that she and deceased were "fumbling with the gun", he tried to get it away from her, and the gun "went off"); and *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1962) (where deceased grabbed a gun lying across defendant's knees, he got it away from her, she got it again near the end of the barrel, and "the gun went off").

Because the court failed to submit an issue of involuntary manslaughter to the jury, there must be a new trial.

[2]   Defendant's other assignments of error are without merit, with the exception of his first assignment of error. During his cross-examination of defendant, the district attorney put the shirt worn by defendant at the time of the incident before the defendant, handed defendant the knife, and directed defendant to try to cut the shirt. Over defendant's objection, the witness was directed to cut the shirt.

"The competency of experimental evidence depends upon its trustworthiness to aid in the proper solution of the problem in hand. [Citations omitted.] When the experiment is carried out under substantially similar circumstances to those which surrounded the original transaction, and in such a manner as to shed light on that transaction, the results may be received in evidence, although such experiment may not have been performed under precisely similar conditions as attended the original occurrence. The want of exact similarity would not perforce exclude the evidence, but would go to its weight with the jury. 1 Michie on Homicide, 832. Whether the circumstances and conditions are sufficiently similar to render the results of the experiment competent is of course a

preliminary question for the court, and unless too wide of the mark, the ruling thereon will be upheld on appeal. [Citations omitted.]

'The general rule as to the admissibility of the result of experiments is, if the evidence would tend to enlighten the jury and to enable them to more intelligently consider the issues presented and arrive at the truth, it is admissible. The experiment should be under circumstances similar to those prevailing at the time of the occurrence involved in the controversy. They need not be identical, but a reasonable or substantial similarity is sufficient'—*Edwards, J.,* in *Shepherd v. State,* 51 Okla. Crim., 209, 300 P., 421." *State v. Phillips,* 228 N.C. 595, 598, 46 S.E. 2d 720, 722 (1948).

We think it obvious that this experiment fell far short of being conducted under circumstances substantially similar to those existing at the time of the incident when the defendant's shirt was allegedly cut and was thus "too wide of the mark" to be upheld on appeal.

New trial.

Judges HEDRICK and WEBB concur.